BUILDERS' MATERIAL SUPPLY COMPANY, APPELLANT,
v. EDWARD SCHOEN, RESPONDENT.

Argued November 26, 1913—Decided July 10, 1914.

Where the owner and contractor by agreement in accordance with the terms of the filed contract, change the terms of payment contained therein, by allowing the owner to undertake a part performance himself, thus eliminating one of the payments specified in the contract—*Held*, that such a change was not an alteration of the contract, but was within the contemplation of the parties in interest as subcontractors and otherwise, and that where the plaintiff claimed upon a stop-notice, based upon such changed payment, the direction of a verdict for the defendant under the circumstances was proper.

On appeal from the Supreme Court.

For the plaintiff, *Lum, Tamblyn & Colyer.*

For the defendant, *Adams & Schoen* and *Edward J. Luce.*

The opinion of the court was delivered by

MINTURN, J.   The defendant, who was owner of certain land in Newark, contracted with R. M. Barbutti to erect a building upon the land.   The contract, which was duly filed in the county clerk's office, was in the usual form of building

contracts, and contained the provision that no alteration should be made in the work "except upon written order of the architect, and, when so made, the value of the work added or *omitted* shall be computed by the architect and the amount so ascertained shall be added or deducted from the contract price."

The plaintiff supplied material to the contractor for use in the building to the amount in value of $904.55. The contract provided for a first payment of $500 when the foundation was laid, and a second payment of $500 when the stucco work was completed, the third and fourth payments in other contingencies, and for a fifth and final payment of $922. The contractor received the first, third and fourth payments, but not the second, which he waived as the result of an agreement with the owner and the architect, pursuant to the above-quoted provision, that the contractor should omit the stucco work, the owner would assume its performance himself, and in consideration of this the sum of $725 was deducted from the contract price.

The plaintiff bases its claim upon a stop-notice served upon the owner in compliance with the third section of the Mechanics' Lien act. The plaintiff made the necessary proof of the delivery of the material and the service of the stop-notice. The facts upon which the claim is based are not in question, nor is it denied that the contract was altered by eliminating the second payment and by an agreement which empowered the owner to otherwise contract for the doing of the work covered by that payment.

The defendant's liability is sought to be rested on section 5 of the Mechanics' Lien act, relating to payments in advance of the terms of the contract, and on the proposition that the making of the third payment before the stucco work was done constituted such an advance payment.

The learned trial judge directed a verdict for the defendant, basing his determination principally on the case in this court of *Smith* v. *Dodge & Bliss Co.*, 59 *N. J. Eq.* 584, 586. We think this action was correct.

The language of Mr. Justice Van Syckel, speaking for this court in that case, says:

"It is obvious, therefore," * * * "that the order cannot operate to diminish the sum in the hands of the owner, * * * and thereby to defeat the inchoate lien of the materialman, *unless the contract itself reserves the right to the parties to change it at their option. In that event the material-man and workmen must give credit to the contractor at their peril, and are without this inchoate right of lien, or, more strictly speaking, are subject to have that right taken away by a change of the contract without their consent."*

Such was the situation in the case at bar. The right to change the contract in the particular referred to by agreement between the builder and owner was expressly reserved, and the only complaint urged here is that the parties to the contract availed themselves of that provision of the contract without notice to the plaintiff and others interested as materialmen and subcontractors.

It should suffice to say that the justification for the change was the contract itself, and that the plaintiff therefore is practically estopped from denying that the authority for the change existed if the parties to the contract deemed it necessary to make it.

The argument in opposition to the legal correctness of this principle is based upon a construction given to the language contained in the opinion of the learned Chief Justice, speaking for this court in *Coles & Sons Co.* v. *Lothbridge,* 81 *N. J. L.* 406, which it is urged must be held in effect to determine that any alteration whatever of the provisions of the contract, whether consented to by the parties in interest or not, must be held to operate as eliminating the contract *in toto* from the case, and leaving the parties to their statutory right of lien. We do not so construe that case, and it is manifest that the reasoning contained therein must be limited by the facts to which it was applied.

The subject of complaint in that case was that the owner, under an arrangement with the builder, made advance payments to him in consideration of a discount thereon allowed

to him by the builder for that accommodation. Plainly such conduct was in clear violation of the terms of the contract as well as a contravention of the terms and spirit of the Mechanics' Lien act, and in practical effect subserved the purpose of enabling the principals to the contract by secret agreement to defraud the subcontractors and materialmen, whose rights were, so to speak, pinned to the provisions and guarantees of the contract. No such subversive result can be attributed to the contractual privilege of which the parties availed themselves here. The contract itself, which in practical effect was the chart by which all subsidiary parties in interest had adjusted their obligations and shaped their course, held out this privilege to the principal contracting parties as a right of which they might avail themselves during the progress of the work, should circumstances require recourse to it.

The insertion of the provision in the contract cannot be said to be unreasonable or intended as a basis for fraud, since it is of the stereotype order of covenant peculiar to such contracts and intended to answer the reasonable changes of design or convenience which an owner may deem necessary during the progress of the work. No one in interest could be said to be deceived by the change, none defrauded by a course of action to which all in practical effect had *in limine* acceded and contemplated.

The instances which may be cited where the principle invoked by the learned Chief Justice as dispositive of the Lothbridge case was applied, will be found to be cases where to hold otherwise would in legal effect be tantamount to declaring that the legislature by this remedial enactment intended to lend its aid to the indirect perpetration of a fraud.

It is enough for present purposes to determine that the language of Mr. Justice Van Syckel contained in *Smith* v. *Dodge Bliss Co., supra,* is dispositive of the case at bar, and to hold that the very act complained of here as an alteration and, therefore, subversive of the contract, was but the exercise of a contractual right which the parties in interest, including this plaintiff, must be held to have contemplated when they entered into subcontracts, based as we must assume upon a

tacit assent to the provisions of the principal contract containing the provision in question.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   12.

*For reversal*—None.